UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

MAR 0 2 2006

CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| ROBERT T. MITRIONE, | * | CIV 05-4072 |
| | * | |
| Petitioner, | * | |
| | * | MEMORANDUM OPINION |
| -vs- | * | AND ORDER |
| | * | |
| R. MARTINEZ, Warden, Federal | * | |
| Prison Camp, | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Robert Mitrione, an inmate at the Federal Prison Camp in Yankton, South Dakota, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241. He asks the Court to review a prison disciplinary proceeding in which he lost 27 days of good time credit for fighting with another inmate. Petitioner claims that his due process rights were violated because he was acting in self defense during the fight, and the BOP's definition of "fighting" is too broad. Petitioner has exhausted his administrative remedies. (Doc. 20.) For the reasons discussed below, the Court denies the writ.

## BACKGROUND

Petitioner is serving a 23-month sentence for mail fraud 18 U.S.C. § 1341 and false claims in violation of 18 U.S.C. § 287. On September 6, 2004, staff at the prison learned that Petitioner had been involved in a fight with another inmate, Richard Townsend, who shared a room with Petitioner. In his § 2241 petition, Petitioner describes the situation with inmate Townsend:

> On the sixth of September 2004 the petitioner was subjected to a series of continuing provocations and attacks by another inmate. That morning he displayed sustained verbal aggression towards me because he disapproved of my adjusting window blinds to allow some light into the room we shared with eight other inmates. When it was obvious that he would not relent I left the room to avoid further unpleasantries.
> Upon my return that evening the inmate in question continued these disparaging remarks. He refused to cease these despite my polite requests. At one

point I stood up (so as to establish eye contact) and again requested he cease. In response, he pushed me down and lept (sic) upon me while committing further batteries. My response at this point was to physically contain him, insure my own (and his) safety, and establish calm. This took approximately 15-30 seconds. Once achieved, I released him and left the room. As a result of this physical assault I sustained facial contusions and a liberally bleeding laceration to the bridge of my nose.

I went to a nearby lavatory to tend to these injures. While I was standing at a sink, he appeared in the doorway armed with a lock in a sock and brandishing steel toed workboots (both common "weapons" in prison assaults). Quickly stating that he was going to finish what he had started, he came at me, landing several blows. Again, I simply contained and quited (sic) him (again 15-30 seconds), requested he discontinue, released him and left the site as the path was now clear. I returned to the room and continued my wound care.

A very short time later, he reappeared in the room handling his weapon in a threatening manner. In a preamble to a sought third physical encounter he made comments such as "one of us has got to go", "don't go to sleep", "you'll be finding something in your ribs", etc. This time he was not between me and the door, and I simply exited the room.

A short time later I reported these incidents to a staff member.

Lieutenant Lori Sablan investigated and prepared an incident report charging that Petitioner and inmate Richard Townsend had engaged in a fight. Petitioner admitted to having been involved in the fight. Upper body checks conducted of the inmates revealed Petitioner had injuries to his face, chin and a laceration to the bridge of his nose. Townsend had pain and swelling in his left eye and scratches to his chest and right arm. A search of the room shared by Petitioner and Townsend revealed small droplets of blood near Petitioner's bed. Lieutenant Sablan referred the matter to the Unit Discipline Committee ("UDC"). Petitioner appeared before the UDC on September 9, 2005. He stated that his behavior was strictly self-defense and an attempt to subdue a hostile situation. Due to the serious nature of the charges, the UDC referred the case to the Discipline Hearing Office ("DHO") for a hearing.

Petitioner was advised of his rights before the DHO. Petitioner requested and was provided a staff representative. The staff representative obtained all documentation and reports regarding the charge against Petitioner. For institutional safety and security, prison officials did not allow Petitioner to see all of the documentation. Petitioner appeared before the DHO with his staff

representative on September 14, 2004. He stated that he and another inmate were involved in a physical altercation. The other inmate was the aggressor and Petitioner acted in self defense. Petitioner's staff representative made a statement on Petitioner's behalf, arguing that the other inmate was the aggressor. The DHO determined that Petitioner committed the prohibited act of fighting with another person in violation of Offense Code 201. Its decision was based upon: (1) Petitioner's statement admitting getting into a verbal and physical altercation with another inmate; (2) the staff investigation of the incident which portrayed Petitioner as having an active role in the incident; (3) the Petitioner's own disclosure to staff immediately following the incident in which Petitioner admits to a physical altercation with another inmate; (4) the follow-up assessment from Medical Services which indicated contusions and abrasions consistent with fighting; and (5) the Petitioner's mitigating claim that his participation in the incident was solely in self-defense. The DHO imposed sanctions that included taking away 27 days good-time credit and the loss of visiting privileges for 30 days. After exhausting his administrative remedies, Petitioner filed this § 2241.

### DISCUSSION

Petitioner argues that prison officials violated his right to due process by finding that his acts of self-defense violated the prison rule against fighting with another person. Due process requires only the existence of "some evidence" to support the revocation of good time credits. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (due process requirements satisfied if "some evidence" supports decision to revoke good time credits). Having thoroughly reviewed the record in this case, it is clear that the BOP's disciplinary decision was based on some evidence. *See Goff v. Dailey*, 991 F.2d 1437 (8th Cir. 1993) (use of the "some evidence" standard in prison disciplinary hearings satisfies an inmate's right to due process). The evidence included the staff investigation, the Petitioner's own statements and admissions, and the medical reports. The proceedings before this Court are not a retrial of the incidents.

Petitioner also contends that the BOP violated his due process rights by failing to clearly define "fighting" and failing to give inmates notice of what behavior constitutes "fighting." Due process requires fair notice of prohibited conduct before a sanction can be imposed. *Coffman v.*

*Trickey*, 884 F.2d 1057, 1060 (8th Cir. 1989) ("district court should have granted [inmate] a directed verdict on his claim that he was deprived of liberty without due process of law when [prison superintendent] punished him for conduct that was not proscribed"). The Court directed Respondent to supplement the record with information regarding the notice given to Petitioner that his behavior was proscribed. Respondent submitted the Declaration of Frank Giganti, the Durand Unit Manager at the Yankton Federal Prison Camp. Giganti is involved in intake screening, admissions and orientation for new inmates. According to Respondent, Petitioner received notice that this conduct was prohibited on at least two occasions, and was given guidance on how to deal with situations in which he felt threatened. First, during intake screening, which took place before Petitioner was allowed into the general population at the prison, Petitioner received a copy of the Admissions and Orientation Booklet which sets forth the inmate's rights and responsibilities, the prohibited acts, and the disciplinary severity scale. The inmate rights and responsibilities portion of the Booklet tells the inmate that fighting is prohibited. Petitioner was also given notice that fighting was prohibited during the admissions and orientation process which takes place shortly after the inmate arrives at the institution. Inmates are instructed on prohibited acts and are advised how they should handle situations in which they are threatened. They are told to contact a member of their unit team or any officer within the institution when they are threatened, and to do so prior to a physical altercation. According to Giganti and Respondent, inmates are encouraged by staff to ask questions or seek counsel from team members any time they need clarification on any institutional rules or safety issues.

Based on this record, the Court rejects Petitioner's argument that the rule prohibiting fighting was so vague as to deny him notice that his conduct involving inmate Townsend was prohibited. The rule prohibits fighting in any form and Petitioner had fair notice that he could not fight with another inmate for any reason. He was instructed to contact a prison official if he felt threatened. Petitioner could reasonably be expected to know that his actions on September 6, 2004 could be deemed by prison officials as fighting with another person.

According to Petitioner, he was acting in self-defense, not "fighting." This argument is

4

simply another way to challenge the DHO's determination that Petitioner committed the prohibited act of fighting with another person in violation of Offense Code 201, and the Court already has found that some evidence supports the DHO's decision. Respondent asserts that, in order to avoid violence and chaos within the institution, the BOP cannot encourage inmates to "fight back" in self-defense. Instead, the BOP encourages inmates to contact staff. Respondent has never indicated, as Petitioner contends, that there is no right to self-defense in a correctional setting, or that any response to an attack would violate Offense Code 201. Rather, Respondent contends that, in this case, Petitioner had plenty of time between the altercations during the day of September 6, 2004, to contact staff. The Court agrees. Whether it is called "fighting with another person" or "fighting in self-defense," conduct such as Petitioner's in this case can undermine prison safety and security.

Finally, Petitioner challenges the decision not to allow him access to some of the documentation regarding the investigation of the charge against him. He cites no authority indicating that he is entitled to all documentation, and the Court is aware of none. Petitioner was provided with advance notice of the charge, and he was furnished an opportunity to present a defense. He declined to call witnesses. His staff representative was provided with all of the documentation and reports regarding the charges. An impartial hearing officer conducted the disciplinary hearing. Petitioner was given a written statement of evidence relied upon and the reason for the disciplinary decision. The procedures employed complied with due process. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974) (outlining the procedural safeguards that due process requires in prison disciplinary proceedings).

Petitioner has failed to show that the Respondent violated his due process rights, and his petition must be denied. Accordingly,

IT IS ORDERED:

(1)     that the petition for writ of habeas corpus under 28 U.S.C. § 2241 is denied; and

(2)     that the Motion to Produce, doc. 11, is denied.

5

Dated this 2nd day of March, 2006.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _Shelly Margulies_
   (SEAL)    DEPUTY

6